**Acura Luxury Lease™**

LEASE AGREEMENT

Lease Date: 02/28/2014    DE

Services

**LESSEE(S) (Print Name & Address)**

Name of Lessee: BOHDAN MAKUCH
Street Address: 1851 MEADOWBROOK RD
City: ABINGTON    State: PA
Zip: 19001-2019    County: MONTGOMERY
Name of Co-Lessee: MELISSA MAKUCH

**VEHICLE (or U.P.B. ADDRESS (if different))**
Name of Driver:
Email Address:
Driver Phone Number: (215)356-0504

**LESSOR (Dealer)**
Name of Lessor: SUSSMAN H.V.
Street Address: JRK RD & THE FAIRWAY
City: INTOWN    State: PA
Zip: 9046
Dealer Number: 251431

By signing this Lease, Lessee and each Co-Lessee (collectively, "I", "my", "me") individually and together agree to lease the Vehicle, described below, according to the terms on both sides of this Lease and Lessee and each Co-Lessee are jointly and severally liable for all obligations of this Lease. I accept delivery of the Vehicle and acknowledge that it is in good operating order and has the odometer reading recorded below. "Lessor" refers to the Lessor ("Dealer") named above and Assignee. Assignee is Honda Lease Trust, the assignee for all Honda and Acura leases. American Honda Finance Corporation, as the administrator of the Lease on behalf of Honda Lease Trust. American Honda Finance Corporation ("AHFC") shows as the administrator of the Lease on behalf of Honda Lease Trust. American Honda Finance Corporation is doing business as Acura Financial Services ("AFS").

**LEASE TERM:** 36 **MONTHS**

**VEHICLE DESCRIPTION**

| New/Used | Year | Make & Model | Body Style | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| NEW | 2014 | ACURA RDX | SW | 5J8TB3H38EL011679 | 11 |

Primary use of Vehicle is for Personal, Family, or Household purposes unless the following box is checked: ☐ Business, Commercial, Agricultural, or Lessee is an organization or governmental entity.

**FEDERAL CONSUMER LEASING ACT DISCLOSURES**

| 1. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized Below) | 2. MONTHLY PAYMENTS | 3. OTHER CHARGES (not part of my Monthly Payment) | 4. TOTAL OF PAYMENTS (The amount I will have paid by the end of the Lease.) |
|---|---|---|---|
| $ 3000.00 | My first Monthly Payment of $ 565.94 is due on 02/28/2014, followed by 35 payments of $ 565.94 due on the 28TH of each month. The total of my Monthly Payments is $ 20373.84 | Turn-in Fee (if I do not purchase the Vehicle) $ 350.00   N/A  N/A    Total $ 350.00 | $ 23157.90 |

**5. *ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

**A. AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

| (1) Capitalized Cost Reduction (Amount Paid in Cash) | $ 2080.79 |
|---|---|
| Sales/Use Tax on Amount Paid in Cash | 187.27 |
| (2) Capitalized Cost Reduction (Credit for Net Trade-in Allowance) | N/A |
| Sales/Use Tax on Credit for Net Trade-in Allowance | N/A |
| (3) Advance Monthly Payment (1st Month) | 565.94 |
| (4) Refundable Security Deposit | N/A |
| (5) Initial Title Fees | N/A |
| (6) Initial Registration Fees | 36.00 |
| (7) Other: DOC FEE | 125.00 |
| (8) Other: N/A | N/A |
| (9) Other: PA TIRE | 5.00 |
| (10) TOTAL | $ 3000.00 |

**B. HOW THE AMOUNT DUE AT LEASE SIGNING OR DELIVERY WILL BE PAID**

| (1) Credit for Net Trade-in Allowance | $ N/A |
|---|---|
| Year: N/A   Make: N/A | N/A |
| (2) Manufacturer Contribution | N/A |
| (3) Dealer Contribution | N/A |
| (4) Amount to be Paid in Cash | 3000.00 |
| (5) N/A | N/A |
| (6) N/A | N/A |
| (7) N/A | N/A |
| (8) TOTAL | $ 3000.00 |

*REC'D MAR 1 8 REC'D*

**6. MY MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:**

A. GROSS CAPITALIZED COST: The agreed upon value of the Vehicle ($ 34218.68) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance). $ 34813.68

B. CAPITALIZED COST REDUCTION: The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the gross capitalized cost. − 2080.79

C. ADJUSTED CAPITALIZED COST: The amount used in calculating my base monthly payment. = 32732.89

D. RESIDUAL VALUE: The estimated value of the Vehicle at the scheduled end of the Lease Term used in calculating my base monthly payment. − 20894.85

E. DEPRECIATION AND ANY AMORTIZED AMOUNTS: The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. = 11838.04

F. RENT CHARGE: The amount charged in addition to the depreciation and any amortized amounts. + 6853.52

G. TOTAL OF BASE PAYMENT(S): The depreciation and any amortized amounts plus the rent charge. = 18691.56

H. LEASE PAYMENTS: The number of payments required during the term of my Lease. ÷ 36

I. BASE MONTHLY PAYMENT: = 519.21

J. MONTHLY SALES/USE TAX: + 46.73

K. OTHER: N/A + N/A

L. OTHER: N/A + N/A

M. TOTAL MONTHLY PAYMENT ("MONTHLY PAYMENT") = $ 565.94

**EARLY TERMINATION.** I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.

**7. EXCESSIVE WEAR AND USE.** I may be charged for excessive wear based on Lessor's standards for normal use and for mileage in excess of 15,000 miles per year at the rate of 20 cents per mile.

**8. PURCHASE OPTION AT END OF LEASE TERM.** I have an option to purchase the Vehicle AS-IS, WHERE-IS at the end of the Lease Term for $ 20894.85, plus any required taxes and fees.

**9. OTHER IMPORTANT TERMS.** Review this Lease for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.

**10. ITEMIZATION OF GROSS CAPITALIZED COST (See Section 6A)**

| A. Agreed upon Value of Vehicle | $ 34218.68 | G. Optional Maintenance Contract | $ N/A |
|---|---|---|---|
| B. Sales/Use Tax | $ N/A | H. Optional Vehicle Service Contract | $ N/A |
| C. License, Title, and Registration Fees | $ N/A | I. N/A | $ N/A |
| D. Outstanding Prior Credit or Lease Balance | $ N/A | J. N/A | $ N/A |
| E. Dealer Documentation/Preparation/Service Fee | $ N/A | | |
| F. Acquisition Fee | $ 595.00 | K. Total = Gross Capitalized Cost | $ 34813.68 |

**11. WARRANTIES**

If the Vehicle is new, the Vehicle is covered by the manufacturer's standard new car warranty. If the Vehicle is not new, there is no express warranty on the Vehicle unless indicated below.
☐ Used vehicle limited warranty provided by the manufacturer.    ☐ Remainder of standard new vehicle limited warranty provided by the manufacturer.

☐ Other:

LESSOR LEASES THE VEHICLE TO ME "AS IS", EXCEPT AS PROVIDED IN THIS LEASE (AND UNLESS PROHIBITED BY LAW). LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO THE VEHICLE'S (OR ANY OF ITS PARTS OR ACCESSORIES) CONDITION, MERCHANTABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND LESSOR MAKES NO OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER. If this Lease is entered into in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new) or West Virginia, Lessor does not disclaim any implied warranty of merchantability or fitness for any particular purpose.

**12. OPTIONAL SERVICE CONTRACT, INSURANCE AND OTHER PRODUCTS**

I do not have to purchase any of the optional products or services listed below to enter into this Lease, and they are not a factor in Lessor's credit decision. If I have indicated so below, it means I want to purchase the products and/or services for the price(s) listed below. If I have decided to purchase any of the products and/or services, I acknowledge that I have read the separate contract or notice which describes its terms and conditions. Coverage may be subject to approval by the provider. If the price of any products and/or services I bought is not part of the Itemization of Gross Capitalized Cost, I will pay for them upon Lease signing or delivery. Lessor may receive a portion of the price of any optional products and/or services I buy.

| | Premium or Charge | Provider | Term | Lease Index/Miles |
|---|---|---|---|---|
| Optional Maintenance Contract | $ N/A   N/A | N/A | N/A | N/A / N/A |
| Optional Vehicle Service Contract | $ N/A   N/A | N/A | N/A | N/A / N/A |
| Other N/A | $ N/A   N/A | N/A | N/A | N/A / N/A |
| Other N/A | $ N/A   N/A | N/A | N/A | N/A / N/A |

**13. ESTIMATED FEES AND TAXES DURING LEASE TERM**

I agree to pay when due or reimburse Lessor for all title/license/registration/official fees and taxes over the term of my Lease (including any extensions), whether paid at Lease signing, included in my Monthly Payments or billed otherwise by Lessor or my taxing jurisdiction, including personal property taxes. Lessor estimates this amount to be $ 1977.55. The actual total of fees and taxes may be higher, or lower, depending upon whether the garaging address of the Vehicle changes, and on the tax rates in effect, or the value of the Vehicle at the time a fee or tax is assessed. Some taxes and fees may come due after the Lease terminates. I agree to pay any such amounts within 10 days of being invoiced or otherwise when indicated by the taxing authority. I will be responsible for any fines or penalties if I fail to pay the bill when due.

**14. VEHICLE INSURANCE**

I will pay for and maintain during the Lease term, and until the Vehicle is returned to Lessor, insurance on the Vehicle which has the following minimum coverages: (a) Public Liability Insurance that either covers up to $100,000 for bodily injuries to any one person, $300,000 for bodily injuries for any one accident, and $50,000 for property damage, or has a combined single limit of $300,000 for bodily injuries and property damage for any one accident; and (b) Physical Damage Insurance covering loss or damage to the Vehicle, with deductibles of no more than $1,000 for collision and upset loss and $1,000 for comprehensive fire and theft loss. The Policy of Public Liability Insurance must show Assignee as an additional insured. The policy of Physical Damage Insurance must show Assignee as loss payee. I may choose to get the required coverages myself or through any person, firm, or corporation. I agree to provide written proof of insurance to Lessor upon request, and authorize Lessor, and its agents, to contact my insurance agent and insurance company to verify coverage as required by this Lease. I further authorize Lessor to endorse my name(s) on any check or draft from my insurance company for any claim. Lessor may change the amounts of required insurance. I acknowledge that the limits required under this Lease may not be sufficient for my needs, and will see my insurance agent for more information.

I affirm that the following insurance coverage is in force as of the Lease Date. I must instruct my insurance agent to add as an additional loss payee and as an additional insured, and to send the Insurance Policy, Endorsement, or Certificate to: Honda Lease Trust c/o PDP Services, P.O. Box 650201, Hunt Valley, Maryland 21065-0201.

| Insurer Name | Policy Number |
|---|---|
| GEICO | 4313774061 |
| Agent's Name: DIRECT   Agent's Address: ONE GEICO BLVD   FREDERICKSBURG VA 22412 | Agent's Phone Number: 800 841 3000 |

**15. ARBITRATION**

The parties agree that any unresolved disputes shall be submitted to arbitration in accordance with the Arbitration clause (Section 50). By initialing this Section, I am confirming that I have read this Section and the Arbitration clause, including the method of opting out of arbitration.    Lessee's Initials: BM ✓    Co-Lessee's Initials: MM ✓

**16. NOTICES**

**FOR PURPOSES OF THE NOTICES BELOW "YOU" REFERS TO LESSEE.**

**Notice:** If you do not meet your Lease obligations, you may lose the Vehicle.  **AK and OR Notice:** If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER.

**WARNING -** Unless a charge is included in this Lease for public liability or property damage insurance, none is provided by Lessor.

**NOTICE TO MICHIGAN LESSEES:** The early termination payoff balance of the Vehicle as determined by Lessor may be different than the actual cash value of the Vehicle as determined by the insurer of the Vehicle. Except to the extent the GAP Waiver in Section 36 applies, Lessee is responsible for the amount by which the Adjusted Lease Balance described in Section 25 exceeds the proceeds from the insurer of the Vehicle.    Lessee's Initials: N/A    Co-Lessee's Initials: N/A

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

**YOU AGREE THAT** ASSIGNEE AND AHFC MAY OBTAIN YOUR CREDIT REPORT, CREDIT SCORE OR OTHER CONSUMER REPORT FOR USE IN CONNECTION WITH COLLECTION OF AMOUNTS OWED UNDER THIS LEASE, ENFORCEMENT OF THIS LEASE, AND MARKETING SOLICITATIONS FOR RETAIL INSTALLMENT FINANCING OR LEASE PROGRAMS AFTER LEASE DATE.

**THIS LEASE CONTAINS THE ENTIRE AGREEMENT BETWEEN YOU AND US.** No agreements exist between you and Lessor except as set forth in this Lease. The agreement between the parties may only be modified by a writing signed by you and Lessor, except that the Lease may be extended by agreement over the phone or an agreement formed through other electronic means of communication for a period of six months. No course of performance will modify the agreement between the parties or constitute a waiver of any right under this Lease.    Lessee's Initials: BM ✓    Co-Lessee's Initials: MM ✓

**NOTICE:** (1) BY SIGNING BELOW, YOU AGREE TO ALL THE PROVISIONS ON BOTH SIDES OF THIS LEASE. (2) YOU ACKNOWLEDGE THAT YOU HAVE READ THE ENTIRE LEASE, INCLUDING THE REVERSE SIDE. (3) YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED A COMPLETELY FILLED-IN COPY OF THIS LEASE AND OF ANY OTHER AGREEMENTS, POLICIES OR CERTIFICATES THAT YOU SIGNED.

**NOTICE TO CONSUMER:** 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement.

**17. SIGNATURES**

A. INDIVIDUAL LESSEE SIGNATURE(S)

X _(signed)_   BOHDAN MAKUCH         X _(signed)_   MELISSA MAKUCH
Lessee Signature   Name            Co-Lessee Signature   Name

B. BUSINESS LESSEE SIGNATURE

X N/A                    N/A
Signature   Name                 Title

C. LESSOR SIGNATURE AND ASSIGNMENT

The authorized signature of the Lessor below has the effect of: (a) accepting the terms and conditions of this Lease; (b) acknowledging verification of the Lessee's insurance coverage required by this Lease; and (c) assigning to Honda Lease Trust, or its successors and assignees all of its right, title and interest in and to this Lease, the proceeds of this Lease and the Vehicle, according to the terms and conditions of the Lease Plan Agreement between Honda Lease Trust and the Lessor.

X _(signed)_    SUSSMAN H.V.              Co.
Authorized Signature   Name                Title

AFS LS A0S 10/13    SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS
AFS - white    LESSEE - pink    DEALER - gold

## PAYMENTS

Monthly Payment must be due on or between the 1st and 28th of the month. The second Monthly Payment includes sales or use tax, the payment amount may increase or decrease. I will not change or stop any Lease payment for any reason, even if the Vehicle is stolen, destroyed, seized by a governmental authority or experiences mechanical problems.

**19. LATE CHARGE/RETURNED CHECK CHARGE:** To the extent permitted by law, I will pay a late charge of the lesser of $25 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due, except if the Dealer is located in Colorado, Iowa or Maine. If the Dealer is located in Colorado, I will pay a late charge of the lesser of $15 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due. If the Dealer is located in Iowa, I will not owe late charges. If the Dealer is located in Maine, I will pay a late charge of the lesser of $10 or 5% of the unpaid portion of any Monthly Payment that is not received within 15 days after it is due. **Returned Check Charge:** I will also pay a $20 charge for any check or similar instrument returned for any reason if permitted under applicable law.

**21. OTHER CHARGES/TOTAL OF PAYMENTS:** I understand that Section 3 of the Lease ("Other Charges") and Section 4 of the Lease ("Total of Payments") do not reflect amounts collected on behalf of third parties (such as property taxes, fines, or tolls or charges imposed if I fail to abide by or modify the terms of this Lease. I am also responsible for these amounts and will refer to all other terms and conditions of this Lease for a description of all charges due.

## VEHICLE MAINTENANCE AND USE

**22. VEHICLE MAINTENANCE AND OPERATING COSTS:** I will maintain the Vehicle in good working order and condition and have all necessary repairs made, using genuine manufacturer's replacement parts. I will pay all expenses for Vehicle use and operation, including maintenance, repair, fluids, tires and other expenses. At my expense, I will have the Vehicle serviced in accordance with the manufacturer's minimum recommendations and as requested by the manufacturer in connection with any recall campaign, have the service validated, and be able to provide proof that such service has been performed. Lessor may inspect the Vehicle at any reasonable time.

**23. USE:** I will notify my insurance company and AFS immediately of any damage to or loss of the Vehicle, and will cooperate following any such incident. I will not: (a) allow unlicensed drivers to operate the Vehicle; (b) use or allow the Vehicle to be used illegally, improperly, or to transport goods or people for pay; (c) use the Vehicle in a way that causes cancellation or suspension of insurance or causes the manufacturer's warranty to become void; (d) use the Vehicle to pull trailers that exceed the manufacturer's trailer towing recommendations; (e) remove the Vehicle from the 48 contiguous United States without Lessor's written consent (unless the Vehicle was originally leased in Alaska or Hawaii); or (f) change, mark or install equipment in the Vehicle without Lessor's written consent.

**24. REGISTRATION:** I will register the Vehicle, as required in the state where the Vehicle is garaged and pay for all license, title and registration costs. If I move or change the Vehicle's garaging address, I will notify AFS immediately and pay for all resulting taxes and title, registration or other fees.

## ENDING MY LEASE

**25. PURCHASE OPTION PRIOR TO THE END OF LEASE TERM:** I have the option to purchase the Vehicle AS IS, WHERE IS at any time (unless a governmental agency has seized the Vehicle and instructed Lessor not to release the Vehicle to me). This purchase option may be exercised only by the Lessee. If I purchase the Vehicle prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (defined below), plus (a) any payments or other charges due and unpaid under this Lease (except Excess Mileage and Excessive Wear and Use charges) and (b) any taxes or fees required by law in connection with the purchase. The "Adjusted Lease Balance" is the unamortized portion of the Adjusted Capitalized Cost, determined on an Actuarial basis, where earnings are accrued on the first day of every period. Lessor will provide a written explanation of the Actuarial method used to determine the Adjusted Lease Balance upon request. I will re-register and retitle the Vehicle in my name at the time I purchase it. If I fail to do so, Lessor may cancel the registration.

**26. NOTICE:** If I exercise the Purchase Option under this Lease, I acknowledge that AFS, on behalf of Assignee, does hereby transfer, sell over and assign all of its rights (but not its obligations) to sell such Vehicle to Honda Finance Exchange, Inc. pursuant to the Sub-Servicing and Master Exchange Agreement between AFS and Honda Finance Exchange, Inc. **Notice is hereby given that all of the rights (but not the obligations) to sell the Vehicle have been assigned to Honda Finance Exchange, Inc. pursuant to such Master Exchange Agreement.**

**27. EARLY TERMINATION LIABILITY:** If I am not in default, I may terminate this Lease early. If I decide to terminate the Vehicle to Lessor, I will owe the lesser of (a) the Standard Early Termination Liability and (b) the Remaining Payments Liability except that, in the event of a Total Loss, I will owe (a) the Standard Early Termination Liability, less the Turn-In Fee, only.

**(a) Standard Early Termination Liability:** I will owe Lessor (i) any Monthly Payments already due and unpaid and any other amounts owed arising from my failure to keep promises under this Lease; plus (ii) any official fees and taxes imposed in connection with the termination; plus (iii) the Early Termination Charge, which is the amount, if any, by which the then Adjusted Lease Balance (determined as described above) exceeds the Realized Value of the Vehicle (described in the section below); plus (iv) the Turn-In Fee.

**(b) Remaining Payments Liability:** I will owe Lessor (i) all amounts due and unpaid under this Lease plus (ii) all Monthly Payments that will otherwise come due through the end of my scheduled Lease Term; plus (iii) charges for Excessive Wear and Use/Excess Mileage under Section 30; plus (iv) the Turn-In Fee.

Lessor may terminate the Lease at any time if the Lease is in default, in which case, in addition to the foregoing amounts, I also agree to pay Lessor's costs of repossessing, storing and transporting the Vehicle as well as Lessor's costs of collection, including court costs and reasonable attorneys' fees, to the extent permitted by law and provided that if this Lease is governed by Iowa, Maine or Ohio law, attorneys' fees will not be owed.

**28. DETERMINATION OF REALIZED VALUE OF THE VEHICLE:** If the Vehicle is lost, stolen or destroyed, the Vehicle will be a "Total Loss" and the Realized Value will be the actual proceeds Lessor receives from my insurer or any other party in payment for the Loss. If no proceeds are received, the Realized Value will be zero. In all other situations the Realized Value of the Vehicle upon early termination will be determined in one of the following ways: (a) by written agreement between Lessor and me, provided it is signed within 10 days after I return the Vehicle to Lessor; (b) by a professional appraisal of the wholesale value of the Vehicle, if I choose to obtain one at my sole expense within 10 business days after returning the Vehicle to Lessor. Lessee may select an independent third party appraiser who is acceptable to Lessor to make the appraisal; the appraised value will then be the Realized Value; or (c) if the Realized Value is not determined by (a) or (b) above within 10 days after I return the Vehicle to Lessor, Lessor will proceed to sell the Vehicle at wholesale in a commercially reasonable manner. The net sale price, less any fees and taxes imposed upon Vehicle disposition, will be the Realized Value.

**29. SCHEDULED END OF LEASE LIABILITY:** I agree that if I do not purchase the Vehicle at the end of the Lease, my payment liability at that time will be the sum of (a) any Monthly Payments already due and unpaid and any other amounts arising from my failure to keep my promises under this Lease; plus (b) any Excessive Wear and Use amounts, defined below; plus (c) any Excess Mileage charges; plus (d) any official fees and taxes imposed in connection with Lease termination; plus (e) the Turn-In Fee.

**30. EXCESSIVE WEAR AND USE/EXCESS MILEAGE:** If I do not purchase the Vehicle at the end of my scheduled Lease term, and subject to the limited waiver below, I will reimburse Lessor for the amount it would cost Lessor to repair excessive wear and use to the Vehicle, whether or not Lessor makes repairs. "Excessive Wear and Use" includes, but is not limited to: (a) any mechanical defect or failure; (b) broken or missing parts or accessories (including missing keys or remote entry devices); (c) damaged body, fenders, bumpers, metal work, lights or trim, or damaged or broken glass; (d) paint which is chipped; (e) interior rips, stains, burns, or excessively worn areas; (f) missing or unsafe wheels or tires (including spare), tires with less than 1/8th inch of tread remaining at the shallowest point; (g) damage or any other condition that makes the Vehicle unsafe or unlawful to operate; or (h) safety and emission control equipment not in proper working order. I also agree to pay for Excess Mileage as stated in Section 7.

**31. LIMITED EXCESSIVE WEAR AND USE WAIVER:** Lessor agrees to waive Excessive Wear and Use charges up to $750 if, as of the scheduled termination date, I am in compliance with all the terms and conditions of this Lease including, without limitation, payment obligations and insurance requirements. I remain responsible for any damage and for Excessive Wear and Use charges that are in excess of the $750 waiver. The waiver does not apply to Excess Mileage charges.

**32. RETURN OF THE VEHICLE:** Whether the Lease is terminated early or as scheduled, I agree to return the Vehicle to the Dealer's address as shown on this Lease or to any address AFS specifies. I am aware that if I am not in default, Lessor may agree to extend this Lease for an additional six months by agreement over the telephone or an agreement formed through other electronic means of communication. I agree to contact Lessor for additional details. Otherwise, if I keep possession of the Vehicle past the Lease Term, I agree to continue Monthly Payments, but I understand that continued payment does not permit me to keep the Vehicle. I agree to pay for any damages that Lessor may suffer because I failed to return the Vehicle at Lease termination.

**33. ODOMETER DISCLOSURE STATEMENT: On termination of this Lease (or upon election to purchase the Vehicle), I agree to provide a signed written disclosure to Lessor of the correct odometer mileage on the Vehicle, as required by federal law, and understand that the failure to do so may result in fines and/or imprisonment. I agree to pay Lessor for any loss, claims, damage, costs and expenses (including legal expenses) which result from my failure to promptly provide Lessor with a correct written odometer disclosure statement.**

## DEFAULT (OR LOSS) OF THE VEHICLE

**34. DEFAULT:** I will be in default if: (a) I fail to make any payment when due under this Lease and any required period before a default may occur has elapsed; (b) a bankruptcy petition is filed by or against me; (c) a proceeding in receivership is filed by or against me or my property, or I make an assignment for the benefit of creditors; (d) I fail to comply with the insurance requirements of the Lease; (e) I do not repair or maintain the Vehicle as the Lease requires; (f) the Vehicle is lost, stolen, destroyed or determined by Lessor to be unsuitable for use ("Total Loss"); (g) I fail to answer traffic summons or pay any traffic tickets or other fines when due; (h) the Vehicle becomes subject to a lien; (i) the Vehicle is seized or confiscated for any reason by a law enforcement agency; (j) I break any of my other agreements in the Lease and such breach significantly impairs the prospect of payment, performance, or realization of Lessor's interest in the Vehicle or (k) I die. In Iowa and Utah the events described in (b) through (k) will only be considered a default if the event has materially impaired the condition, value or protection of the Vehicle and Lessor's rights to the Vehicle or the event has materially impaired the Lessee's prospect to pay amounts due under the Lease. **Remedies:** In the event of default, Lessor may do any or all of the following: (a) take any reasonable measures designed either to correct the default or to save Lessor from loss, in which case I will pay Lessor upon Lessor's request for the costs and expenses incurred; (b) terminate the Lease and my rights to possess and use the Vehicle; (c) take possession of the Vehicle by any method or manner permitted by law; (d) determine my termination liability on an early termination basis which I agree to pay immediately; (e) apply my security deposit to any amounts I owe; and (f) pursue any other remedy permitted by law. All of Lessor's rights are cumulative and the taking of any action will not prevent the taking of any other action. I also agree to pay Lessor for all collection and legal costs, including all reasonable attorneys' fees and court costs Lessor incurs, to the extent permitted by law.

**35. TOTAL LOSS:** If the Vehicle is lost, stolen, destroyed or determined by Lessor to be unsuitable for use, the Vehicle is a Total Loss and I am in default and I will owe the Standard Early Termination Liability set forth in Section 27(a), less the Turn-In Fee.

**36. GAP WAIVER:** If I promptly report a Total Loss and I have maintained the required insurance coverages and Lessor receives all insurance proceeds, Lessor will waive the Early Termination Charge described in Section 27(a)(iii) (the "GAP Waiver"), unless an exclusion applies GAP Waiver will apply and I will only owe Lessor for the insurance deductible and any amounts deducted from the insurance settlement for other, prior damage, excessive wear, use and mileage. Ancillary products will be canceled directly with the provider and any refunds received will be applied to my outstanding balance prior to applying the GAP Waiver. **Exclusions:** The GAP Waiver does not apply if:

(a) The Vehicle has been seized or confiscated for any reason by a law enforcement agency;

(b) I failed to file a police report after a Vehicle theft;

(c) The Total Loss occurred while the Vehicle was outside the United States;

(d) The Total Loss was caused by my wrongful act or omission, or gross negligence;

(e) A Default, other than a payment default, has occurred and I am in Default.

(f) I fail to provide information or documents requested by the Lessor in connection with the Total Loss, such as insurance information.

## ADDITIONAL INFORMATION

**37. OWNERSHIP:** This is a lease agreement. Lessor owns the Vehicle, I agree that this Lease is a true Lease for tax and other purposes and that Lessor will receive the benefits of ownership. Lessor has not given me any information or advice regarding any possible tax consequences or benefits under this Lease.

**38. REIMBURSEMENT AGREEMENT:** I understand and agree that I am responsible for promptly paying any fines incurred on the Vehicle, such as traffic or parking tickets, and that this liability is joint and several if this Lease is signed by more than one Lessee. I authorize Lessor to provide any information about me requested or required by a state parking or traffic authority in connection with any such parking or traffic ticket. If Lessor pays any repair bills, storage bills, taxes, fines, tickets or other charges on the Vehicle, I agree to repay the amount to Lessor immediately upon demand. If I do not pay, I will reimburse AFS and pay a $20 administrative fee, or other amount as allowed by law, for every such fine, ticket, penalty, or other charge paid on my behalf.

**39. LESSEE'S REPRESENTATIONS:** I promise that I have given true and correct information in the application for credit, and have no knowledge that would make that information untrue in the future. Lessor has relied on the truth and accuracy of that information in entering into this Lease. I promise that I have given a true payoff amount on any Vehicle traded in and I will compensate Lessor to the extent the payoff amount is inaccurate.

**40. NOTICES/NO WAIVER:** I agree to notify Lessor within 30 days of any change in my address. Unless I notify Lessor in writing of any change in my address, any notices Lessor sends me are sufficient if sent to my address as shown on this Lease. Lessor waiver or excuse of a Default is not a waiver or excuse of any future default and any delay in exercising any remedies under this Lease is not a waiver of Lessor's right to exercise those remedies. I waive all right to demand, prior notice of demand, notice of acceleration and notice of intent to accelerate. Lessor can waive or delay the enforcement of its rights as to any person signing this Lease without affecting its rights as to any other person signing this Lease. I also agree that Lessor can release any signer from his or her obligations without releasing any other signer from their obligations.

**41. SECURITY INTEREST:** I authorize AFS, on my behalf, to settle or release any claim under the insurance related to Lessor's ownership of the Vehicle, to receive and endorse any checks or drafts representing premium rebates and/or proceeds of such insurance, and to apply such amounts to my obligations under this Lease. AFS may make and receive claims for all proceeds paid or payable under any service contract purchased under this Lease for application to my obligations under the Lease, in the event I am in default under this Lease. AFS may cancel any service contracts and receive any funds paid or payable as a rebate, refund, return or otherwise.

**42. CELLULAR PHONE NUMBERS AND EMAIL:** I agree that by providing a cellular telephone number to Lessor, I agree that Lessor may call and text that number and use an automatic dialing system or prerecorded or automated voice to call me on my cellular telephone and to leave voicemail messages even if I am charged by a telecommunications provider for the call, voicemail or text message, unless prohibited by law. I also agree that Lessor may send emails to any email address I have provided. Lessor is not prohibited by this Lease from contacting me through any means permissible under the law.

**43. ASSIGNMENT: I agree not to transfer, sublease, rent, or assign this Lease, the Vehicle, or my right to use the Vehicle.** This Lease will be assigned to the Assignee identified on the other side. AFS will administer this Lease. I agree to make all payments and perform all other obligations under the Lease to AFS. I acknowledge that AFS (and Assignee, if different) will not have to make any repairs, maintain the Vehicle or perform any of Dealer's duties under this Lease. AFS has the power to act on behalf of Assignee to administer, enforce and defend this Lease.

**44. LIMITED POWER OF ATTORNEY:** I irrevocably appoint Lessor as my attorney in fact to (a) settle all insurance claims related to the Vehicle; (b) endorse my name on all checks I receive for loss or damage to the Vehicle, and (c) execute my name on all title, registration and other documents related to the Vehicle, such as a state Department of Motor Vehicles application for certificate of title or lien notation. This power of attorney is irrevocable and coupled with an interest.

**45. CREDIT REPORTING:** I authorize AFS and its affiliates, at any time, to reinvestigate any information provided on my credit application and to verify my current credit standing and, in the course of doing so, request and receive credit bureau reports. If I default under this Lease, I authorize AFS and its affiliates to make any credit inquiries AFS and its affiliates deem appropriate, and understand that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency. I authorize AFS and its affiliates and others to exchange credit, account, and financial information about me at any time, except to the extent I have instructed Lessor otherwise and only to the extent permitted by applicable law.

**46. MODIFICATIONS/GOVERNING LAW:** This Lease sets forth all of the agreements between Lessor and Lessee for the lease of the Vehicle, and no modification of this Lease shall be valid unless it is made in writing and signed by Lessor and Lessee. Notwithstanding the foregoing provision and unless otherwise prohibited by law, a continuation, verbally agreed to or agreed to through electronic means of communication by Lessor and Lessee, of a Lease Term not to exceed six months beyond the originally scheduled end of Lease Term shall be valid. If any provision of this Lease is unenforceable or invalid, that provision shall be severed from the remainder of the Lease and the validity and enforceability of the remaining provisions shall not be affected or impaired. This Lease is to be governed by the laws of the state in which the Dealer is located as of the date of execution of this Lease.

**47. LIMITATION OF LIABILITY:** I agree that Lessor is not responsible for indirect or consequential damages such as loss of profits and personal injury which are caused by any Vehicle defect, Vehicle damage or related to the time elapsed during which I do not have use of the Vehicle because it is being repaired or serviced.

**48. CLASS ACTION WAIVER. I HEREBY WAIVE ANY RIGHT I MAY HAVE TO PARTICIPATE IN A CLASS ACTION, BRING A CLASS ACTION, OR PROCEED ON A CLASS BASIS.**

**49. ADDITIONAL STATE LAW NOTICES.**
**A. NOTICE TO COLORADO LESSEES IN EVENT OF TOLL VIOLATIONS:** Pursuant to the requirements of Colorado law, I will be liable for payment of all toll evasion violation civil penalties incurred on or after the date I take possession of the Vehicle. The Lessor will provide my name, address and state driver's license number to the proper authorities when a toll evasion violation civil penalty is incurred during the term of this Lease.

**B. NOTICE TO MISSISSIPPI LESSEES: A DOCUMENTARY/SERVICE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW. HOWEVER, IT MAY BE CHARGED TO A BUYER/LESSEE FOR THE HANDLING OF DOCUMENTS AND THE PERFORMING OF SERVICES RELATED TO THE SALE OR LEASE AND MAY INCLUDE DEALER PROFIT. THIS NOTICE IS REQUIRED BY REGULATION OF THE MISSISSIPPI MOTOR VEHICLE COMMISSION.**

## ARBITRATION PLEASE READ THIS SECTION CAREFULLY

**50. ARBITRATION.**

**LESSEE AGREES THAT LESSEE DOES NOT HAVE THE RIGHT TO PARTICIPATE IN A CLASS ACTION. EXCEPT FOR MATTERS OF SELF-HELP VEHICLE RECOVERY AND PROCEEDINGS IN SMALL CLAIMS COURT, DISPUTES BETWEEN LESSOR AND LESSEE, IF NOT RESOLVED INFORMALLY, WILL BE RESOLVED IN FINAL AND BINDING ARBITRATION. LESSEE DOES NOT HAVE THE RIGHT TO A TRIAL BY A COURT OR A JURY. LESSOR AND LESSEE AND LESSOR'S AND LESSEE'S SUCCESSORS AND ASSIGNEES RETAIN THE RIGHT TO EXERCISE SELF-HELP REMEDIES AND TO SEEK PROVISIONAL REMEDIES FROM A COURT PENDING FINAL DETERMINATION OF THE DISPUTE BY THE ARBITER.**

Any disputes or claims against Lessor, its successors and assignees, arising out of or relating to the Vehicle or the Lease, (whether based in contract, tort, statute, fraud, equitable relief, misrepresentation or any other legal theory including state and federal statutory claims) at the option of either Lessor or Lessee will be resolved exclusively by neutral binding arbitration.

The information that can be obtained in discovery from each other or from third persons in arbitration is generally more limited than in a lawsuit. Other rights that I and/or Lessor would have in court may not be available in arbitration. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1-16. Binding arbitration shall be conducted and administered by the American Arbitration Association ("AAA") and shall proceed under the applicable rules of the AAA. See www.adr.org for additional information regarding the AAA. If Lessee objects to the AAA, or AAA no longer arbitrates the type of dispute at issue, binding arbitration shall be conducted and administered by a different arbitration association agreed to Lessor and Lessee and conducted according to the rules of that arbitration association. If Lessor and Lessee cannot agree on an arbitration association, the arbitration association shall be the AAA and, if the AAA no longer arbitrates the type of dispute at issue the next arbitration association shall be the next arbitration association proposed by Lessor.

The arbiter shall be selected in accordance with the applicable AAA rules. The arbiter shall apply the governing law of the jurisdiction where I reside consistent with the FAA and shall honor any claims of privilege recognized at law. The arbitration hearing shall be conducted in the federal district in which I reside. The arbiter shall not have the power to award punitive or treble damages against Lessor or me. **LESSOR AND I AGREE THAT ALL FORMS OF CLASS ACTION OR CLASS ARBITRATION ARE EXPRESSLY PROHIBITED.** For claims of less than $1,000, I will be obligated to pay $50 in arbitration fees and Lessor will pay all other arbitration costs and fees. For claims over $1,000 but under $50,000, I will be obligated to pay my share of the arbitration fees, but no more than the equivalent court filing fee for a state court action filed in the jurisdiction where I reside. For arbitrations in excess of $50,000, Lessor will front the arbitration fees and the fees will be equitably divided by the arbiter in his or her final decision. If the preceding allocation would cause this provision to be unenforceable, Lessor will bear the cost of the arbitration fees.

In all arbitrations, each party will bear the expense of its own counsel, experts, witnesses and preparation and presentation of evidence at the arbitration unless such allocation of expense would cause this provision to become unenforceable, in which case Lessor shall bear all such expenses. Lessor and Lessee and Lessor's and Lessee's successors and assignees retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbiter. Neither Lessor nor I waive the right to arbitrate by exercising self-help remedies, or seeking or obtaining temporary, provisional remedies from a court. Any arbitration with respect to any disputes or claims must be brought within the applicable statute of limitations or statute of repose period. If any part of this arbitration clause is deemed to be invalid or otherwise unenforceable or illegal, the balance of this arbitration clause shall remain in effect and shall be construed in accordance with its terms as if the invalid or illegal provision were not contained herein. If the entire arbitration clause is deemed to be invalid or otherwise unenforceable or illegal, remaining Lease remains in full force and effect, including the waiver of the right to proceed in a class action. I may opt out of arbitration by notifying Lessor in writing within 10 days of executing this Lease.

AFS LS A05 10/13          SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS